**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| **VALENTINO RODRIGUEZ,**<br>**Petitioner,**<br>**v.**<br>**DR. JEFFREY BEARD,**<br>**Respondent.** | **Case No. CV 13-7750-AJW**<br><br>**MEMORANDUM AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

**Background**[1]

On March 26, 2011, around midnight, Los Angeles County Sheriff's Deputy Kristian Kozelchik and his partner, Deputy Richard Laflin, while working patrol, responded to a tire store on Valley Boulevard just east of the 60 freeway. They stopped their vehicle in a dirt area between the freeway off ramp and the fence enclosing the tire store. The fence was made of corrugated metal and was over eight feet tall. When the deputies exited their vehicle, they heard a banging

[1] The following summary is taken from the opinion of the California Court of Appeal. This Court's review of the record confirms that the state appellate court's summary is a fair and accurate one and petitioner does not contend otherwise.

sound, "like someone kicking at the corrugated fencing." They ran in the direction of the noise and saw defendant fall from the top of the fence to the ground.

The deputies approached defendant who looked as if he was "going to run." Because defendant saw other deputies around the tire store, "he just stopped and fell to the ground." When Deputies Kozelchik and Laflin reached defendant, they noticed more than a dozen tires and rims in the area where defendant fell from the fence. They then searched defendant and found approximately 15 lug nuts in his pocket. Deputy Kozelchik noticed that defendant was "extremely dirty" and that his hands were "filthy." Deputy Laflin also noticed that defendant's hands were dirty and that he "seemed a little disoriented." When Deputy Laflin investigated the scene, he saw a ladder up against the inside of the fence in the area from where defendant had fallen.

Javier Cortes was the owner of the tire store where the March 26, 2011, incident involving defendant took place. He went to the store that night after being called by the Sheriff's Department. Deputies at the scene showed him tires, rims, and lug nuts outside the fence of the store. The tires, rims, and lug nuts had been inside the fenced-in yard of the store when Cortes locked the store earlier that night. Cortes did not give defendant permission to take the tires, rims, or lug nuts.

[Lodged Document ("LD") 6 at 2-3].

Petitioner was convicted of one count of petty theft with a prior

theft-related conviction. In addition, the jury found true the allegations that petitioner had suffered two prior serious felony convictions and had served nine prior prison terms. [Clerk's Transcript ("CT") 154-162]. The trial court granted the prosecutor's motion to strike one of the "strike" convictions, and sentenced petitioner to state prison for a term of fifteen years. [Reporter's Transcript on Appeal ("RT") 902-903, 911-912].

The California Court of Appeal affirmed petitioner's conviction, and the California Supreme Court denied his petition for review. [LDs 6 & 8].

In this petition for a writ of habeas corpus, petitioner alleges that the trial court's denial of his request to represent himself amounted to an abuse of discretion and deprived him of his rights under the Sixth Amendment. [Petition, Attachment at 1-5].

**Standard of Review**

A federal court may not grant a writ of habeas corpus on behalf of a person in state custody

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). As used in section 2254(d)(1), the phrase "clearly established federal law" means "holdings of the Supreme Court at the time of the state court decision." Stanley v. Cullen, 633 F.3d

852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)).

Under section 2254(d)(1), a state court's determination that a claim lacks merit precludes federal habeas relief so long as “fairminded jurists could disagree” on the correctness of the state court's decision. Harrington v. Richter, 131 S.Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). This is true even where a state court's decision is unaccompanied by an explanation. In such cases, the petitioner must show that “there was no reasonable basis for the state court to deny relief.” Harrington, 131 S.Ct. at 784.

Under section 2254(d)(2), relief is warranted only when a state court decision based on a factual determination is “objectively unreasonable in light of the evidence presented in the state-court proceeding.” Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

Finally, state court findings of fact – including a state appellate court’s factual summary – are presumed to be correct unless petitioner rebuts that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); see Slovik v. Yates, 556 F.3d 747, 749 n. 1 (9th Cir. 2009).

**Discussion**

On May 25, 2011, petitioner was arraigned. On that date, he requested that the trial court discharge and replace his appointed counsel, Lisa Washington. [RT A1-A2]. After the motion was denied, petitioner’s counsel noted that petitioner’s rejection of a plea offer carrying a seven-year sentence was against her advice. Trial was set for July 19, 2011. [RT A12-A15].

A trial readiness conference was held on July 15, 2011, at which petitioner was represented by new counsel, Tammy Landeros. The following colloquy took place:

The Court: The matter is here for readiness conference. Ms. Landeros, are you ready for trial?

Ms. Landeros: I am, your Honor, and I have relayed to [defendant] the people's last offer. He's not indicated that he would accept that. He keeps indicating he wants alternative offers, and if that's not available, then he wants to represent himself.

The Court: Well, Mr. Rodriguez, are you ready to go to trial Tuesday if you represent yourself?

[Petitioner]: I'll do the best that I can.

The Court: No. Are you ready to go to trial? If not, you are not going to represent yourself, and you are not going to get any better offer than what you just got, which is 84 months because you are looking at 34 years to life, and you are a poster child for 25 years to life with your record.

[Petitioner]: Can I address the court?

The Court: Sure.

[Petitioner]: Okay. This is the first time, Your Honor, since I got in trouble. I know it states there those records, you know, and I just got first time trouble here.

Now what I'm saying is I need help. I never had no sort of program, Sir. That's all it is. All those years it's been either with drugs and alcohol on all my cases associated with crimes that I had done. I was just trying to ask for help, you know, and I don't want to hurt no one's

feelings no more what I have done....

The Court: Well, if you want, I'll recommend ... Corcoran or Donovan where you can get drug treatment from the program, but you are not staying out of prison if you are convicted. You are going to prison. The question is for how long? And you are looking at 34 years to life. That would be the rest of your life [in] Corcoran Prison. I don't think you want to die [in] Corcoran Prison.

[Petitioner]: So is there any way we can get some sort of assistance for me or something? You know, I'll do drug program, sir. That's all I'm asking for because I've done all this time and stuff, and it's like is that the solution for the problem to my life?

The Court: You have Donovan [sic] opportunity to plead for 84 months. It's up to you whether you want to take it or take a chance to do 34 to life. Thing is when you go to prison, you can request to be examined. I can recommend Corcoran or Donovan for drug treatment. The thing is if you are convicted, you are going to prison. It's just a question for how long.

[Petitioner]: So I can have no mercy from this court.... [¶]

The Court: Pardon me?

[Petitioner]: Can I have any mercy?

The Court: Yes. Instead of 34 to life, it's 84 months.

[Petitioner]: I think it's a little extreme. I was under the influence at the time when it happened. If I was not under the influence, I would not have done nothing like that.

The Court: You are a poster child for three strikes and you

are out. I mean, every chance you get, you steal, break into people's homes, try to break into people's homes. You have two prior first degree residential burglaries. You are a danger out there.

You are not staying on the street if you get convicted, so it's a question do you want to accept that 84 months, which is seven years, or do you want to roll the dice and potentially get a lot more?

[Petitioner]: I can't have no type of program, sir? That's what I am asking....

The Court: I'll recommend something [like] Corcoran prison, but you are not getting a program on the outside. Don't you understand that you are going to prison? Start with that premise.

If you are convicted, if you want a program, you get a program [in] Corcoran prison, but you are not staying out and getting a program. You've had many years to get a program on your own, but the only time you want a program....

[Petitioner]: Well, the reason why I said because I never had a program.

The Court: Well, you had [an] opportunity to get programs on your own, but you did not take advantage. You could have talked to your parole agent all the times you were on parole. You did not do it. Now the answer's no, you are not getting a program instead of prison.

[Petitioner]: The only thing I was ignorant at those times. I was very young. I'm a late bloomer, sir.

The Court: Well, you are going to prison — end of discussion — if you are convicted, but if you are not convicted, then you can go get a program all you want if you are acquitted.

[Petitioner]: Well, can I have another attorney, then? A state appointed?

The Court: You've already had two lawyers, actually.

[Petitioner]: I never asked for a lawyer.

The Court: Excuse me. Last time you were [in] court on May 25, you did a hearing to fire [defense counsel], which was denied. Instead you got another lawyer. You have a new lawyer. You just don't like the offer. You want to shoot the messenger.

[Petitioner]: That's what you want to do to me. Shoot me. I'm just saying with my heart speaking.

The Court: You are trying to con me. Look. I've been around the block a few times.

[Petitioner]: And Jesus Christ is my witness. I'm not trying to con you. Strike me dead right now with a heart attack.

The Court: Look. I've been down the street with too many folks like you. You are not conning me; you are not getting a program; you are not getting another lawyer.

[Petitioner]: Well, let me go pro per, then.

The Court: Only if you can answer ready for trial. If you can't, the answer is denied.

[Petitioner]: Well, if I do not get to go over there to see what I can do for myself, then.

The Court: Your motion is denied. You cannot answer ready for trial. Ms. Landeros, are you ready?

Ms. Landeros: Yes, your Honor.

The Court: People ready?

[Prosecutor]: Yes.

The Court: Jury trial Tuesday, July 19. Oh, that 84 month offer, that's gone.

[RT B1-B6].

On appeal, petitioner argued that the trial court's denial of his request to represent himself deprived him of his Sixth Amendment right under Faretta v. California, 422 U.S. 806 (1977). The California Court of Appeal rejected petitioner's claim as follows:

**Legal Principles**

"A trial court must grant a defendant's request for self-representation if the defendant unequivocally asserts that right within a reasonable time prior to the commencement of trial, and makes his request voluntarily, knowingly, and intelligently. (*People v. Welch* (1999) 20 Cal.4th 701, 729 [85 Cal.Rptr.2d 203, 976 P.2d 754]; *People v. Windham* (1977) 19 Cal.3d 121, 127–128 [137 Cal.Rptr. 8, 560 P.2d 1187] (*Windham* ).) As the high court has stated, however, '*Faretta* itself and later cases have made clear that the right of self-representation is not absolute.' (*Indiana v. Edwards* (2008) 554 U.S. 164, 171 [171 L.Ed.2d 345, 128 S.Ct. 2379, 2384]; see *Jones v. Barnes* (1983) 463 U.S. 745, 751 [77 L.Ed.2d 987, 103 S.Ct. 3308], citing *Faretta*, *supra*, 422 U.S. 806 ['we have held that, with some limitations, a defendant may elect to act as his or her own advocate ...'].) Thus, a *Faretta* motion may be denied if the defendant is not competent to represent himself (*Indiana v.*

*Edwards*, at p. 178 [128 S.Ct. at p. 2388] ), is disruptive in the courtroom or engages in misconduct outside the courtroom that 'seriously threatens the core integrity of the trial' (*People v. Carson* (2005) 35 Cal.4th 1, 6 [23 Cal.Rptr.3d 482, 104 P.3d 837]; see *id.* at p. 8; *Faretta*, at p. 834, fn. 46), or the motion is made for purpose of delay (*People v. Marshall* (1997) 15 Cal.4th 1, 23 [61 Cal.Rptr.2d 84, 931 P.2d 262] (*Marshall* ))." (*People v. Lynch* (2010) 50 Cal.4th 693, 721–722.)

"Likewise, we have long held that a self-representation motion may be denied if untimely. (*Windham*, *supra*, 19 Cal.3d at pp. 127–128.) Under *Windham*, a motion is timely if made 'a reasonable time prior to the commencement of trial.' (*Id*. at p. 128, fn. omitted.) '[O]nce a defendant has chosen to proceed to trial represented by counsel,' a defendant's motion for self-representation is 'addressed to the sound discretion of the court.' (Fn. omitted.) (*Windham*, at p. 128.) We observed that our imposition of a timeliness 'requirement should not be and, indeed, must not be used as a means of limiting a defendant's constitutional right of self-representation.' (*Id*. at p. 128, fn. 5.) Rather, the purpose of the requirement is 'to prevent the defendant from misusing the motion to unjustifiably delay trial or obstruct the orderly administration of justice.' (*People v. Burton* (1989) 48 Cal.3d 843, 852 [258 Cal.Rptr. 184, 771 P.2d 1270] (*Burton* ).)" (*People v. Lynch*, *supra*, 50 Cal.4th at p. 722.)

"In assessing an untimely self-representation motion, the trial court considers such factors as 'the quality of

counsel's representation of the defendant, the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay which might reasonably be expected to follow the granting of such a motion.’ (*Windham*, *supra*, 19 Cal.3d at p. 128.)” (*People v. Lynch*, *supra*, 50 Cal.4th at p. 722, fn. 10.)

[LD 6 at 6-7].

**Analysis**

Defendant contends that the trial court abused its discretion when it denied his request to represent himself. According to defendant, the trial court failed to consider all of the factors set forth in *Windham*, *supra*, 19 Cal.3d at p. 128.

Contrary to defendant's assertion, the record supports a reasonable inference that defendant was misusing the *Faretta* self-representation motion to delay unjustifiably trial or obstruct the orderly administration of justice. Prior to making his motion, defendant rejected the prosecutor's offer of a seven-year term and instead moved to replace his attorney, a motion the trial court denied. Thereafter, defendant’s counsel was replaced. On the day defendant made his *Faretta* motion, he again rejected an offer of a seven-year term and instead tried to persuade the trial court to order him to attend a drug treatment program in lieu of prison. When the trial court refused to order a drug treatment program, defendant asked the trial court to replace his new lawyer. After the trial court refused to

> replace his second attorney, defendant made his self-representation request. In response, the trial court indicated its willingness to grant the request, but only if it would not cause a delay in trial. When defendant failed to assure the trial court that he would not need a continuance, the trial court denied the *Faretta* motion.
>
> Based on the foregoing, it does not appear that the trial court's denial of the *Faretta* motion was an abuse of discretion, i.e., arbitrary, capricious, or patently absurd. We need not reach the issue as to whether defendant made an unequivocal request to represent himself because, even assuming arguendo defendant's request was unequivocal, the trial court reasonably concluded that defendant was using the *Faretta* motion in an attempt to obtain a plea agreement to which he was not entitled and which was unlikely. Such misuse of the motion to delay or obstruct the orderly administration of justice warranted the denial of that motion.

[LD 6 at 8].

The state court correctly identified the relevant Supreme Court authority. Under the Sixth Amendment, a criminal defendant has the right to waive his right to counsel and represent himself. <u>Faretta</u>, 422 U.S. at 820-821; <u>accord</u> <u>Indiana v. Edwards</u>, 554 U.S. 164, 170–171 (2008). A defendant's request to represent himself, however, must be "unequivocal, timely, and not made for the purpose of delay." <u>Robinson v. Kramer</u>, 588 F.3d 1212, 1216 (9th Cir. 2009), <u>cert. denied</u>, 131 S.Ct. 108 (2010); <u>see</u> <u>Hirschfield v. Payne</u>, 420 F.3d 922, 926 (9th Cir. 2005).

A state court's determination that a petitioner's Faretta motion was made for purposes of delaying or obstructing proceedings constitutes a finding of fact. See Hirschfield, 420 F.3d at 927; Rodriguez v. Cate, 2012 WL 2458114, at *8 (C.D.Cal. June 12, 2012), report and recommendation adopted, 2012 WL 2428172 (C.D.Cal. June 26, 2012). As a result, federal habeas relief is available only if petitioner demonstrates that the state court's determination was based upon an unreasonable determination of the facts in light of the record. As the Ninth Circuit has emphasized, section 2254(d)(2) constitutes a "particularly deferential" standard and requires reversal only if a federal court, after reviewing the state-court record, "determines that the state court was not merely wrong, but actually unreasonable." Taylor v. Maddox, 366 F.3d 992, 999–1000 (9th Cir.), cert. denied, 543 U.S. 1038 (2004).

Here, the state appellate court's factual finding that petitioner's Faretta motion was made to delay or obstruct the proceedings was not objectively unreasonable. Petitioner's request to represent himself was made only four days before trial, and he was unwilling to assure the trial court that he would not seek a continuance. Petitioner had moved to replace two different attorneys, and the latter motion for substitute counsel was made and denied immediately before his request for self-representation. In addition, prior to seeking self-representation, petitioner engaged in a lengthy colloquy with the trial court which reflected his dissatisfaction with the prosecution's plea offer and his frustration at the unavailability of placement in a drug treatment program as an alternative to state prison. On this record, the Court cannot say that the state appellate court's finding that petitioner's request was made for purposes of

delay or obstruction was objectively unreasonable. See Hirschfield, 420 F.3d at 927 (concluding that the state court's finding that the petitioner's request for self-representation was made with the intent to delay his trial was not unreasonable where the record showed that the petitioner "requested self-representation only one day before trial was scheduled to begin. Nothing in the record suggests that he knew, when he decided to bring his motion, that the trial would need to be delayed even absent his motion because of the prosecutor's and defense counsel's schedules. He had moved to substitute counsel on four previous occasions, and he admitted that 'it may be true that every time that I have asked for a new attorney it's been close to trial.'"); Ainsworth v. Virga, 2012 WL 7984098, at *8-9 (C.D.Cal. Aug. 13, 2012) (rejecting a Faretta claim because a state court's finding that the petitioner was attempting to "manipulate the proceedings" was not unreasonable in light of petitioner's misbehavior, his numerous requests for substitute counsel and the fact that his Faretta request was made the day before trial), report and recommendation adopted, 2013 WL 1707918 (C.D.Cal. Apr. 19, 2013); Rodriguez, 2012 WL 2458114, at *6–8 (rejecting a Faretta claim because the state court's finding that the petitioner was "playing games" and "committing obstructionist misconduct" by filing numerous motions for substitute counsel as well as numerous Faretta motions was not objectively unreasonable).

In addition, although the state court did not need to reach the issue, it reasonably could have concluded that petitioner's request was not unequivocal. The following factors are relevant to a determination of whether a Faretta request is unequivocal: "the timing of the request, the manner in which the request was made, and whether the defendant repeatedly made the request." Stenson v. Lambert, 504

F.3d 873, 882 (9th Cir. 2007), cert. denied, 555 U.S. 908 (2008). In addition, a request for self-representation is considered equivocal when it is "a momentary caprice," the "result of thinking out loud," or an "impulsive response" to a denial of a request for substitute counsel. See Jackson v. Ylst, 921 F.2d 882, 888–889 (9th Cir. 1990).

Petitioner's request to represent himself was made immediately after his request for substitute counsel was denied, and after he realized that he was not eligible for a drug treatment program in lieu of state prison. A fair reading of the record suggests that petitioner's Faretta request did not reflect an unequivocal desire to represent himself, but rather was a "momentary caprice" reflecting petitioner's frustration over his predicament. See Stenson, 504 F.3d at 883 (holding that a defendant's preference for receiving new counsel over representing himself may be an indication of an equivocal Faretta request); Jackson, 921 F.2d at 888–889 (holding that a request for self-representation constituting an impulsive response to the trial court's denial of a request for substitute counsel was properly denied as equivocal); Young v. Knipp, 2013 WL 2154158, at *8-9 (C.D.Cal. May 15, 2013) (finding a state court's determination that a Faretta request was equivocal was not unreasonable where the petitioner's request indicated that he felt under duress, was made immediately after the denial of his motion to substitute counsel, and where the petitioner had also requested continuances); Ekene v. Cash, 2012 WL 4711723, at *5 (C.D.Cal. May 14, 2012) (finding that the record supported the state court's determination that the petitioner "did not really want to represent himself," but only felt compelled to do so by the trial court's refusal to appoint a new attorney), report and recommendation adopted, 2012 WL 4711718 (C.D.Cal. Oct. 1, 2012).

Finally, to the extent that petitioner complains that the trial court abused its discretion by failing to properly apply California law in denying his request to represent himself, his allegations fail to raise a cognizable federal claim. See Swarthout v. Cooke, 131 S.Ct. 859, 861 (2011); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

**Conclusion**

For the foregoing reasons, the state court's rejection of petitioner's claim (a) was neither contrary to nor involved an unreasonable application of clearly established Supreme Court law, and (b) was not based on an objectively unreasonable determination of the facts in light of the evidence presented in the state court

\\

proceedings. Accordingly, the petition for a writ of habeas corpus is denied.

**It is so ordered.**

Dated: March 11, 2014

Andrew J. Wistrich
United States Magistrate Judge